Argued and submitted September 9, 2003, decision of Court of Appeals and order of Workers' Compensation Board reversed; case remanded to Workers' Compensation Board for further proceedings October 14, 2004

In the Matter of the Compensation of
Buzz Vsetecka, Claimant.

Buzz VSETECKA,
*Petitioner on Review,*

*v.*

SAFEWAY STORES, INC.,
*Respondent on Review.*

(WCB 00-02916; CA A113353; SC S49908)

98 P3d 1116

J. Michael Casey, Portland, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Edward J. Harri, Salem.

Ken Kleinsmith, of Meyers, Radler, Bohy, Replogle & Miller, Lake Oswego, argued the cause and filed the briefs for respondent on review.

G. Duff Bloom, of Cary, Wing, Bloom & Edmunson, P.C., Eugene, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

KISTLER, J.

**KISTLER, J.**

In this workers' compensation case, the Workers' Compensation Board (board) ruled that claimant had failed to give his employer sufficient written notice of a workplace injury and therefore did not reach the question whether the injury caused claimant's condition. The Court of Appeals agreed that the notice was insufficient and affirmed. *Vsetecka v. Safeway Stores, Inc.*, 183 Or App 239, 51 P3d 688 (2002). We hold that the board and the Court of Appeals read the notice statute too narrowly and that claimant's notice was sufficient. We reverse the Court of Appeals decision and the board's order and remand for further proceedings.

Claimant works in a grocery warehouse. On April 30, 1998, a 50-pound box of apples fell from the top of a pallet stacked high with boxes of produce. Claimant raised his right arm to deflect the falling box, which hit his wrist. Claimant immediately felt soreness and stiffness in his wrist.

Claimant's employer requires its employees to report workplace injuries orally to their supervisors and also to record them in an injury log. Consistently with employer's policy, claimant immediately told his supervisor that a "box fell and hit [his] wrist, and that [he] had pain in [his] wrist." That same day, claimant recorded the injury in employer's injury log, which contains spaces for the employee's name, the date of the injury, and a description of the injury. Claimant wrote in the injury log: "Buzz V," "4/30/98," and "pain in right wrist."

Twice within the next month, claimant told his supervisor that he continued to experience pain in his wrist. Both times, he recorded that problem in the injury log. On May 8, he wrote his name, the date, and "right wrist pain." On May 29, he wrote, along with his name and date, "right wrist pain again." Although he continued to experience pain in his wrist, claimant did not seek medical treatment because he believed that he had suffered a sprain that would improve over time.

In 1999, claimant's right wrist symptoms increased, and he spoke with the company nurse, who suggested that he

was suffering from tendinitis. Claimant's symptoms continued to worsen, and he sought medical treatment from Dr. Lisook on January 17, 2000. Lisook referred claimant to a specialist, who diagnosed him as suffering from "a non-union of the scaphoid fracture, right wrist." The specialist performed surgery to correct that condition.

After claimant saw Lisook on January 17, 2000, he filed a workers' compensation claim for the April 30, 1998, injury. Employer denied the claim on the ground that claimant had failed to give it timely written notice in accordance with ORS 656.265.[1] That statute provides, in part:

"(1)  Notice of an accident resulting in an injury or death shall be given immediately by the worker or a dependent of the worker to the employer, but not later than 90 days after the accident. The employer shall acknowledge forthwith receipt of such notice.

"(2)  The notice need not be in any particular form. However, it shall be in writing and shall apprise the employer when and where and how an injury has occurred to a worker. A report or statement secured from a worker, or from the doctor of the worker and signed by the worker, concerning an accident which may involve a compensable injury shall be considered notice from the worker and the employer shall forthwith furnish the worker a copy of any such report or statement.

"(3)  Notice shall be given to the employer by mail * * * or by personal delivery to the employer or to a foreman or other supervisor of the employer. If for any reason it is not possible to so notify the employer, notice may be given to the Director of the Department of Consumer and Business Services and referred to the insurer or self-insured employer.

"(4)  Failure to give notice as required by this section bars a claim under this chapter unless the notice is given within one year after the date of the accident and:

"(a)  The employer had knowledge of the injury or death; [or]

---

[1] Employer also denied the claim on the ground that the April 30, 1998, injury was not the cause of claimant's right wrist condition.

"(b)   The worker died within 180 days after the date of the accident * * *.

"* * * * *

"(6)   The director shall promulgate and prescribe uniform forms to be used by workers in reporting their injuries to their employers. * * * The failure of the worker to use a specified form shall not, in itself, defeat the claim of the worker if the worker has complied with the requirement that the claim be presented in writing."

Claimant requested a hearing. Before the administrative law judge (ALJ) and again before the board, claimant and employer offered differing interpretations of ORS 656.265(2). Focusing on the second sentence in ORS 656.265(2), employer argued that notice must be in writing and "apprise the employer when and where and how an injury has occurred to a worker." Employer contended that the written entries in the injury log, although timely, identified only "when" the injury occurred. They did not identify "where" or "how" it occurred. It followed, employer reasoned, that the written notice was insufficient.[2]

Pointing to the third sentence in ORS 656.265(2), claimant contended that the question, properly understood, was whether the entries in the log put employer on notice that his workplace accident "may involve a compensable injury." He argued that the three entries that he made in the injury log gave employer timely notice that he had been experiencing recurring pain from his April 30, 1998, injury and thus that the injury may be compensable.

The ALJ ruled that the entries in the injury log constituted sufficient notice. Relying in part on an admission by claimant's supervisor, the ALJ concluded that the three notations of right wrist pain in the injury log would have put a reasonable employer on notice that claimant could have a compensable injury. Reaching the merits of the claim, the ALJ found the injury compensable.

---

[2] Employer does not dispute that the workers' compensation claim that claimant filed in 2000 was sufficient written notice. However, because claimant did not give employer that notice until more than a year after the accident occurred, claimant could not rely on the savings provision in ORS 656.265(4).

Employer appealed to the board, which reversed. The board did not reach the question whether the injury caused claimant's wrist condition. Rather, the board ruled that claimant had failed to give his employer sufficient notice. The board started from the proposition that the notice must be in writing and state when, where, and how the injury occurred. It found that the initial entry stated "when" the injury occurred—April 28, 1998. It also found that, given the location and purpose of the injury log, a reasonable trier of fact could infer "where" the injury occurred—*viz.*, in the workplace. The board concluded, however, that the phrase "right wrist pain" did not identify "how" the injury occurred. Because the written notice satisfied only two of the three statutory criteria, the board upheld employer's denial.

Claimant petitioned for review, and a divided panel of the Court of Appeals affirmed. *Vsetecka*, 183 Or App at 241. Starting from the proposition that the phrase "when and where and how" entails three separate inquiries, the majority agreed with the board that the written entries did not tell employer "how" the injury occurred; that is, the statement "right wrist pain" did not tell employer "in what manner" or "by what means or process" the injury occurred. *Id.* at 242-43. The dissent reasoned that claimant's act of noting the injury in the log implied that claimant had injured his wrist at work. *Id.* at 244 (Schuman, J., dissenting). That was sufficient, the dissent reasoned, to tell employer "how" claimant had injured his wrist—he had injured it at work—as well as "where" he had done so. *Id.* We allowed review to consider the level of specificity that ORS 656.265 requires.

■ On review, the parties' dispute reduces to a question of statutory interpretation. Focusing on the phrase "when and where and how," employer argues that that phrase requires three separate and discrete inquiries and that claimant's entries do not pass the third hurdle; they do not communicate "how" the injury occurred. Claimant, for his part, focuses on the context of the phrase "when and where and how," as well as its text. In claimant's view, the context makes clear that directing a worker to tell an employer when, where, and how an injury occurred is the same as asking a worker to explain generally what happened. He contends

that the text, read in context, does not require three discrete inquiries but reduces instead to a single question: Does the writing contain enough details about the when, where, and how of an injury to put an employer on notice that the injury may be compensable?

In analyzing the parties' differing interpretations of ORS 656.265, we begin with the text and context of that statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (describing statutory construction methodology). ORS 656.265(1) requires that a worker give his or her employer notice of an accident that results in an injury or death. The first two sentences in ORS 656.265(2) address the form and contents of that notice. They provide: "The notice need not be in any particular form. However, it shall be in writing and shall apprise the employer when and where and how an injury has occurred to a worker." ORS 656.265(2).

■ Viewed in isolation, that text provides support for employer's position. Ordinarily, however, "text should not be read in isolation but must be considered in context." *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004). Context includes other provisions of the same statute. *Id.* In addition to the text on which employer focuses, ORS 656.265 identifies two other ways in which a worker may notify his or her employer.[3] The third sentence in subsection (2) provides that "[a] report or statement secured from a worker, or from the doctor of the worker and signed by the worker, concerning an accident which may involve a compensable injury shall be considered notice from the worker[.]" The phrase "shall be considered notice" demonstrates that the third sentence describes an alternative way of providing notice; there would be no need for the legislature to state that a report or statement that meets the requirements of the third sentence "shall be considered notice" if the report or statement also satisfied the criteria in the first two sentences of ORS 656.265(2).

---

[3] The legislature enacted the relevant subsections as part of the same bill. *See* Or Laws 1965, ch 285, § 30a (enacting ORS 656.265 in substantially its present form).

Textually, the notice contemplated by the third sentence of ORS 656.265(2) differs in at least two respects from that described by the first two sentences. The first two sentences describe a writing that the worker *gives* the employer; the third sentence refers to a statement or report that someone (presumably the employer) *secures* from the worker or the worker's doctor.[4] Additionally, the third sentence does not repeat the phrase "when and where and how." It rephrases that requirement and provides that any report or statement "concerning an accident which may involve a compensable injury" shall be considered notice.

ORS 656.265(6) refers to yet another way of providing notice of a work-related injury. That subsection directs the director of the Department of Consumer and Business Services (department) to promulgate uniform forms for workers to use to report workplace injuries to their employers. It provides that the failure to use the prescribed form "shall not, in itself, defeat the claim of the worker if the worker has complied with the requirement that the claim be presented in writing." ORS 656.265(6). The last sentence implies that submitting a completed form will constitute notice even though, as claimant notes, the form that the director has prescribed does not require a worker to state "when and where and how" the injury occurred but asks instead a more general question.[5]

The foregoing recitation of text and context leads to three observations. First, ORS 656.265 does not prescribe a single form of notice. Rather, the statute explicitly provides that notice need not take a particular form and identifies three ways of providing notice: (1) a worker may give notice to the employer; (2) an employer may secure a report or statement from the worker or the worker's doctor; or (3) a worker may submit a prescribed form to the employer. Second, in

---

[4] The second independent clause in the third sentence directs the worker's employer to give the worker "forthwith" a copy of the report or statement. That direction implies that the employer is the entity that secured the report or statement.

[5] The department's 801 Form, which is part of the record, asks injured workers to state the date and time of the injury. It then directs them: "Describe accident fully (please print)."

identifying those different ways of providing notice, the legislature has referred to the contents of the notice in different ways. The statute refers to (1) giving notice that apprises an employer "when and where and how" the injury occurred; (2) securing a report or statement "concerning an accident which may involve a compensable injury"; and (3) submitting a form that contains the information that the director prescribes. Finally, the one constant, which the last sentence in subsection (6) makes clear, is that the notice must be in writing.

When, as in this case, a statute contains multiple provisions, ORS 174.010 directs us to read those provisions, if possible, in a way that will give effect to all of them. *See PGE*, 317 Or at 611 (noting rule for construing text). Following that principle, we conclude that notice should tell an employer when, where, and how an injury occurred. That requirement is not a technical one, however. ORS 656.265 explicitly states that the legislature did not intend to impose formalistic requirements on notice. As the various ways of phrasing the required contents of the notice make clear, ORS 656.265 directs injured workers to include enough information about the when, where, and how of an injury to put an employer on notice that, as the third sentence in subsection (2) puts it, the worker may have sustained a compensable injury.

■ ORS 656.265 requires prompt notice so that an employer can conduct a timely investigation into the nature and cause of a worker's injury. *See Colvin v. Industrial Indemnity*, 301 Or 743, 747, 725 P2d 356 (1986) (interpreting ORS 656.265). As the court explained in *Colvin*:

> "Timely notice facilitates prompt investigation and diagnosis of the injury. It assures the opportunity to make an accurate record of the occurrence, and decreases the chance for confusion due to intervening or nonemployment-related causes."

*Id.* (internal quotation marks omitted). Parsing each word in the phrase "when and where and how" separately, as employer would have us do, is at odds with, and indeed may defeat, the purpose of the notice statute, as the court explained it in *Colvin*.[6] The correct question, as the text and

---

[6] Under employer's interpretation of the statute, an employer who received a timely report from a doctor that a worker had lost a limb at work could deny

context make clear, is whether the written information, viewed as a whole, provides enough details about the when, where, and how of an injury to put an employer on notice that the injury may be compensable and thus that an investigation may be advisable.

Although the board and the Court of Appeals did not apply the correct legal standard, we need not remand to permit them to do so. The relevant facts are not disputed, and we may decide whether those undisputed facts comply with ORS 656.265. As noted, within 30 days after the accident, claimant made three written entries in employer's injury log. The board found that those entries put employer on notice that claimant suffered a right wrist injury at work on April 30, 1998. Additionally, a fair inference from that statement is that the injury occurred as the result of a workplace accident. Although not specific, the inference that the injury occurred as a result of a workplace accident provides some information about how the injury occurred. *See Webster's Third New Int'l Dictionary* 1097 (unabridged ed 1993) (defining "how," in part, as "by what means or process"). Finally, the three entries put employer on notice that claimant continued to experience right wrist pain and that he could require medical treatment as a result of the injury.

To be sure, the entries do not identify the specific cause of the injury, but the entries were sufficient to put employer on notice that claimant may have suffered a compensable injury. *See* ORS 656.005(7)(a) (defining compensable injury as "an accidental injury * * * arising out of and in the course of employment requiring medical services"). It follows that employer was also on notice that it should undertake whatever investigation of the nature and cause of his injury it believed appropriate. *See Colvin*, 301 Or at 747 (explaining purposes of notice requirement). To require greater specificity about the cause of the injury would be to impose on the notice statute a level of formalism that the words of ORS 656.265 do not support.

Although we hold that claimant's notice was sufficient, the question that remains is whether the workplace

---

workers' compensation benefits because the report failed to identify the specific manner by which the workplace accident had occurred.

injury caused claimant's right wrist condition. The board did not reach that question, and it is necessary to remand the case to permit the board to do so.

The decision of the Court of Appeals and the order of the Workers' Compensation Board are reversed. The case is remanded to the Workers' Compensation Board for further proceedings.